111 Cal.Rptr.2d 213 (2001)
91 Cal.App.4th 948
Eric HUMPHREY, Petitioner,
v.
The APPELLATE DIVISION OF THE SUPERIOR COURT of Los Angeles County, Respondent;
The People, Real Party in Interest.
No. B149998.
Court of Appeal, Second District, Division Four.
August 22, 2001.
Review Granted November 28, 2001.
*215 Michael P. Judge, Public Defender, Victor Acevedo and John Hamilton Scott, Deputy Public Defenders, for Petitioner.
No appearance for Respondent.
Rockard J. Delgadillo, City Attorney, Debbie Lew, Assistant City Attorney, and Katharine H. MacKenzie, Deputy City Attorney, for Real Party In interest.
*214 CURRY, J.
After the appellate division of the superior court (appellate division) denied petitioner Eric Humphrey's petition for writ of prohibition and certified its decision for publication, we transferred the matter to us pursuant to California Rules of Court, rule 62(a).[1] Petitioner Eric Humphrey challenges the denial of his petition for writ of prohibition by the appellate division, as well as our transfer of the matter under rule 62(a).
We conclude that the transfer under rule 62(a) was improvident, deem the matter before us to be a proceeding in mandamus, and address the merits of Humphrey's challenges to the denial of his writ of prohibition by the appellate division. We further conclude that the appellate division erred in denying Humphrey's writ petition, and in certifying its decision for publication.

RELEVANT PROCEDURAL BACKGROUND
On November 13, 2000, a six-count misdemeanor complaint was filed against Humphrey, charging him, inter alia, with annoying or molesting a child under 18 years old (Pen.Code, § 647.6, subd. (a)),[2] and sexual battery (§ 234.4, subd. (d)). The alleged victims were two 8-year-old female children.
On November 21, 2000, the People filed a motion pursuant to section 1524.1 for a search warrant to permit testing of Humphrey's *216 blood for the HIV virus. Supporting the motion was a declaration from the children's mother, as well as various police and medical reports. Following a hearing, the trial court issued the search warrant on December 5, 2000.
On December 14, 2000, Humphrey filed his petition for writ of prohibition in the appellate division. The appellate division summarily denied the petition on December 22, 2000. On January 4, 2001, this court issued an alternative writ, directing the appellate division to decide the petition on its merits or to show cause. On February 1, 2001, the appellate division complied with our alternative writ by vacating its denial and initiating proceedings on the merits.
On April 11, 2001, the appellate division denied Humphrey's petition in a written decision that it certified for publication. Subsequently, the appellate division denied Humphrey's motion for rehearing, and his request that it certify the case for transfer to this court pursuant to rule 62(a). We ordered that the case be transferred to this court on May 30, 2001.
In addition, Humphrey filed a petition for writ of mandate on May 24, 2001, (Humphrey v. Superior Court, B150307). On June 6, 2001, we ordered that action would be deferred on this petition until the case transferred to us had been determined, and we stayed any disclosure of the results of the blood test.

DISCUSSION

I.
Aside from challenging the appellate division's denial of his petition for writ of prohibition, Humphrey contends that rule 62(a) does not authorize this court to order transfer of the matter on its own motion. The issue presented is apparently one of first impression. Because this issue concerns our jurisdiction over this matter, we address it at the threshold.
Rule 62(a) provides: "A Court of Appeal may order a case transferred to it for hearing and decision when the superior court certifies or the Court of Appeal on its own motion determines from an opinion of the appellate department published or to be published in Advanced California Appellate Reports that such transfer appears necessary to secure uniformity of decision or to settle important questions of law." Under rule 61, "unless the context or subject matter otherwise requires," the term "case" in rule 61(a) means "any case on appeal within the original jurisdiction of a municipal or justice court."
Rule 100 further states that all references in the California Rules of Court to "appellate department" mean "appellate division," and that "[r]ules that apply to an appeal taken from a municipal court judgment to the appellate division of the superior court apply to an appeal taken from a unified superior court (trial court) judgment to the appellate division of the unified superior court (reviewing court)." The adoption of rule 100 was among many changes to California law made in 1998 to facilitate the unification of municipal and superior courts. (Snukal v. Flightways Manufacturing, Inc. (2000) 23 Cal.4th 754, 763, fn. 2, 98 Cal.Rptr.2d 1, 3 P.3d 286.)
Rule 62 and other rules implement Code of Civil Procedure section 911 (Snukal v. Flightways Manufacturing, Inc., supra, 23 Cal.4th at p. 762, 98 Cal.Rptr.2d 1, 3 P.3d 286), which provides in pertinent part: "A court of appeal may order any case on appeal to a superior court in its district transferred to it for hearing and decision as provided by rules of the Judicial Council when the superior court certifies, or the court of appeal determines, that the transfer appears necessary to secure uniformity of decision or to settle *217 important questions of law." (Italics added.) The Penal Code, which adopts the California Rules of Court in criminal matters (§ 1247k), contains an essentially identical provision in section 1471.
As our Supreme Court recently explained in Snukal v. Flightways Manufacturing, Inc., supra, 23 Cal.4th at page 763, 98 Cal.Rptr.2d 1, 3 P.3d 286, our appellate jurisdiction under rule 61(a) is controlled by Code of Civil Procedure section 911. Accordingly, the key issue presented is whether section 1471 and Code of Civil Procedure section 911 permit a Court of Appeal to transfer a writ proceeding originating within the jurisdiction of the appellate division. We begin by observing that historically, California constitutional and statutory law has distinguished the appellate jurisdiction of the appellate division from its original jurisdiction.
The original statutes regarding appellate jurisdiction limited the then denominated appellate department to appeals from the municipal court. (2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 344, p. 413.) The appellate jurisdiction of the appellate division is now defined in Code of Civil Procedure section 77, which provides that "[t]he appellate division of the superior court has jurisdiction on appeal from the following courts . . .: [¶] (1) The municipal courts within the county. [¶] (2) The superior court in a county in which there is no municipal court." (Code Civ. Proa, § 77, subd. (e), italics added.)
As Witkin indicates, prior to recent statutory and constitutional changes, the then denominated appellate department, "as such, ha[d] only appellate functions; the statutes conferred] no original jurisdiction . . . ." (2 Witkin, Cal. Procedure, supra, Courts, § 346, p. 415; 2 Witkin, Cal. Procedure (2001 Supp.) Courts, § 346, p. 88.) Thus, in Thomasian v. Superior Court (1953) 122 Cal.App.2d 322, 328, 265 P.2d 165, the municipal court granted a request to transfer a case to the superior court. The appellate department concluded that this order was not appealable, and it issued a writ of review annulling the order. (Ibid.) Applying then current law, the court in Thomasian determined that the writ was void because the appellate department had acted in excess of its jurisdiction in granting it. (Id. at p. 333, 265 P.2d 165.) The Thomasian court reasoned that the petition seeking the writ had invoked the original jurisdiction of the superior court, yet the appellate department had treated it "as an appellate department matter in the same full sense as if it were an appeal from the municipal court. . . ." (Ibid.)
However, in 1998, article VI, section 10 of the California Constitution was amended to provide that "[t]he appellate division of the superior court has original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition directed to the superior court in causes subject to its appellate jurisdiction." This change was among the modifications to California law under Proposition 220, approved in 1998, and intended to facilitate unification of the municipal and superior courts. (See Historical Notes, 2 West's Ann. Const. (2001 supp.) foll. art. VI, § 10, p. 12; Snukal v. Flightways Manufacturing Inc., supra, 23 Cal.4th at pp. 763, fn. 2, 98 Cal.Rptr.2d 1, 3 P.3d 286.)
In view of the clear statutory distinction between the appellate division's appellate and original jurisdiction, Code of Civil Procedure section 911 and section 1471, together with the rules that implement these sections, cannot be interpreted to confer authorization upon the courts of appeal to transfer cases arising from the appellate division's original jurisdiction. Section 1417 and Code of Civil Procedure section 911, by their plain language, limit transfers to cases on appeal before the *218 appellate division. Because the rules of court cannot conflict with governing statutes (People v. Hall (1994) 8 Cal.4th 950, 960, 35 Cal.Rptr.2d 432, 883 P.2d 974), rule 62(a) authorizes transfers of cases only within the appellate division's appellate jurisdiction.
This conclusion finds additional support in Snukal v. Flightways Manufacturing, Inc., supra, 23 Cal.4th 754, 98 Cal. Rptr.2d 1, 3 P.3d 286. In Snukal, our Supreme Court concluded that under Code of Civil Procedure section 911 and its implementing rules, courts of appeal that transfer cases arising on appeal to the appellate division lack authority to resolve selected issues and then remand the cases to the appellate division for resolution of remaining issues. (23 Cal.4th at p. 776, 98 Cal.Rptr.2d 1, 3 P.3d 286.) In reaching this conclusion, the court in Snukal analyzed the numerous changes in the law made to facilitate unification of the municipal and superior courts. (Id. at p. 763, fn. 2, 98 Cal.Rptr.2d 1, 3 P.3d 286.) It determined that these modifications "do not alter the basic authority of the Court of Appeal to order transfer when the superior court certifies or the Court of Appeal on its own motion determines `that such transfer appears necessary to secure uniformity of decision or to settle important questions of law.' [Citations.]" (Id. at p. 764, fn. 2, 98 Cal.Rptr.2d 1, 3 P.3d 286.) Because the changes in question expanded the jurisdiction of appellate divisions to include original jurisdiction over writ proceedings, but did not alter the authority of courts of appeal to transfer cases, it follows that an appellate court may not transfer proceedings arising from the original jurisdiction of the appellate division.
Although rule 62(a) does not authorize the transfer of this matter, Humphrey's contentions may be properly presented to us in an original proceeding in this court. (Rosenberg v. Superior Court (1998) 67 Cal.App.4th 860, 864, 79 Cal.Rptr.2d 365; Code Civ. Proa, § 904.1, subd. (a)(1)(C).) In view of the extensive briefing submitted in this matter, as well as Humphrey's related petition for writ of mandate pending before this court (Humphrey v. Superior Court, supra, B150307), we deem this to be a proceeding in mandamus and address his remaining contentions. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeals, § 91, pp. 151-153.)

II.
Humphrey contends that the appellate division erred in certifying its decision for publication, and denying his petition for writ of prohibition. We agree with both contentions.

A. Publication

Our conclusion in part I carries with it a necessary corollary: appellate divisions lack the authority to certify for publication opinions concerning matters within their original jurisdiction. In reaching this corollary, we follow the principle of statutory construction requiring us to seek "a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity. [Citations.]" (DeYoung v. City of San Diego (1983) 147 Cal.App.3d 11, 18, 194 Cal. Rptr. 722, revd. on another ground in Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 15, 78 Cal.Rptr.2d 1, 960 P.2d 1031.)
The appellate division's authority to certify opinions for publication is set by statute and court rules. (See 9 Witkin, Cal. Procedure, supra, Appeal, § 674, p. 706.) Government Code section 68902 provides that opinions of the appellate division *219 "as the Supreme Court may deem expedient shall be published in the official reports." Two rules identify conditions under which the appellate division may certify a decision for publication.
The first of these is rule 106, which addresses the manner in which appeals before the appellate division are to be determined. Rule 106 provides in full: "Each appeal shall be heard and determined, or taken under submission at the session at which it was set for hearing, unless, for good cause to be entered in the minutes, it is continued for hearing to another date, or it is ordered to be submitted on briefs to be filed. The judges of the appellate department shall not be required to write opinions in any cases decided by them, but may do so whenever they deem it advisable or in the public interest. If an opinion is to be published in Advance California Appellate Reports, the clerk immediately upon the judgment in the case becoming final shall transmit two copies of the opinion to the Reporter of Decisions in accordance with rule 976 and another copy bearing the notation `To be published in Advance California Appellate Reports' to the Court of Appeal for the district." (Italics added.)
In addition to rule 106, rule 976, which sets standards for the publication of opinions of courts of appeal and appellate divisions, provides in subdivision (c)(1) that "[a]n opinion of . . . an appellate department of the superior court shall be published if a majority of the court rendering the opinion certifies, prior to the decision's finality in that court, that it meets" the standards in question.
Given the reference to rule 976 in rule 106, the two rules must be interpreted together. (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299 [in matters of statutory construction "words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible"].) For this reason, any authorization to publish in rule 976(c)(1) is limited by the authorization conferred in rule 106.
We therefore focus our attention on rule 106. Rule 106 refers only to appeals, and its requirement that decisions certified for publication must be delivered to the Court of Appeal is manifestly intended to facilitate transfers under rule 62(a). Furthermore, as we have explained (see part I., ante), only cases on appeal to the appellate division can be transferred under rule 62(a) by the Court of Appeal. In view of the coordination between rules 106 and rule 62(a), as well as the express reference to appeals in rule 106, the authority to certify opinions for publication found in rule 106 is limited solely to cases on appeal before the appellate division.
Two additional considerations support this conclusion. First, rules 106 and 976 predate the unification of municipal and superior courts, and neither was modified in 1998. (See Decisions, 23 Pt. 1, West's Ann. Court Rules (2001 supp.) foll, rule 106, p. 70; 23 Pt. 2, West's Ann. Court Rules (2001 supp.), rule 976, p. 31.) Because these rules were created when the appellate division had jurisdiction only over appeals, and they were not changed to reflect the appellate division's acquisition of original jurisdiction, they authorize publication of opinions arising solely from appeals to the appellate division.
Second, our interpretation accords with the Legislature's intent, as manifested in Code of Civil Procedure section 911 and section 1471. Those provisions indicate that the Legislature intended to empower courts of appeal to regulate the growth of California law through published appellate division opinions by means of the transfer procedure. Thus, any interpretation of the California Rules of Court that would *220 authorize the publication of appellate division opinions beyond the scope of the transfer procedure would defeat this intent.
In sum, the appellate division erred in certifying its opinion for publication.[3]

B. Search Warrant

Humphrey also contends that the trial court erred in issuing the search warrant under section 1524.1.
Under section 1524.1, when a defendant has been charged with a crime under enumerated circumstances, the trial court, "at the request of the victim, may issue a search warrant for the purpose of testing the accused's blood with any HIV test . . . only under the following circumstances: when the court finds, upon the conclusion of the hearing . . . [,] there is probable cause to believe that the accused committed the offense, and that there is probable cause to believe that blood, semen, or any other body fluid identified by the State Department of Health Services in appropriate regulations as capable of transmitting the human immunodeficiency virus has been transferred from the accused to the victim." (§ 1524.1, subd. (b)(1).) At the pertinent hearing, "only affidavits, counter affidavits, and medical reports regarding the facts that support or rebut the issuance of a search warrant . . . shall be admissible." (§ 1524.1, subd. (b)(3)(A).)
As section 1524.1 expressly states, the purpose of the testing procedure that it establishes is "to benefit the victim of a crime by informing the victim whether the defendant is infected with the HIV virus," as well as to "protect the health of both victims of crime and those accused of committing a crime." (§ 1524, subd. (a).) Section 1524.1 further provides that it does not authorize testing or disclosure of test results "for the purpose of a charging decision by a prosecutor," and with some qualifications, it does not authorize breach of the confidentiality provisions found in Health and Safety Code section 120975 et seq. (§ 1524.1, subd. (a).)
Here, Humphrey contends that (1) the mother's declaration was insufficient to support the requisite determinations of probable cause, (2) the alleged victims did not request the search warrant, and (3) the search warrant, as issued, did not adequately restrict disclosure of test results. Because our resolution of Humphrey's first contention is dispositive of the entire matter before us, we do not address his remaining contentions.
Humphrey argues that the mother's declaration was inadequate to support the search warrant because it is not based on her personal knowledge, and contains only hearsay on the pertinent matters. In the declaration, the mother declares under penalty of perjury that her statements are true "to the best of [her] knowledge and belief." On the face of the declaration, the mother's description of the alleged events concerning the molestation of the children and transmission of body fluids appears to be derived entirely from conversations with police officers that interviewed the children or from police reports, and from conversations with medical experts. The People do not dispute that the declaration contains hearsay, but contends that it is nonetheless adequate to support a determination of probable cause under section 1524.1.
*221 In view of these facts, the declaration is based on information and belief, rather than on personal knowledge (Lieppman v. Lieber (1986) 180 Cal.App.3d 914, 917-919, 225 Cal.Rptr. 845), and thus we must examine whether it can support a search warrant under section 1524.1. As our Supreme Court observed in City of Santa Cruz v. Municipal Court (1989) 49 Cal.3d 74, 87, 260 Cal.Rptr. 520, 776 P.2d 222, "it is true that an affidavit is normally presumed to state matters personally known to the affiant and lacks evidentiary value, in a variety of civil contexts, when based on information and belief, or hearsay. [Citation.]" Nonetheless, "there are numerous exceptions to the general rule prohibiting affidavits on information and belief, either where the facts to be established are incapable of positive averment, or where expressly permitted by statute. [Citations.]"
Because section 1524.1 is silent as to whether it permits the admission of affidavits on information and belief, the key issue is whether the facts it requires "are incapable of positive averment. . . ." (City of Santa Cruz v. Municipal Court, supra, 49 Cal.3d at p. 87, 260 Cal.Rptr. 520, 776 P.2d 222.) On this matter, the court in City of Santa Cruz stated: "`"Whenever the statute, either in express terms or by implication, requires a person to make a statement which from the very nature of things can only be made on information and belief, an affidavit in that form meets the demands of the statute."'" (Ibid., quoting Brown v. Happy Valley Fruit Growers (1929) 206 Cal. 515, 520-521, 274 P. 977.)
The City of Santa Cruz court identified several cases holding that an affidavit on information and belief satisfied a statute because the statute required averment of facts beyond the personal knowledge of appropriate affiants. (49 Cal.3d at pp. 87-88, 260 Cal.Rptr. 520, 776 P.2d 222.) In Blackman v. MacCoy (1959) 169 Cal. App.2d 873, 879-880, 338 P.2d 234, the court concluded that an affidavit relating improper conversations between a judge and third parties supported a motion to disqualify the judge, even though the affiant lacked personal knowledge of the conversations. In Brown v. Happy Valley Fruit Growers, supra, 206 Cal. at pages 520-521, 274 P. 977, and in Davis-Heller-Pearce Co. v. Ramont (1924) 66 Cal.App. 778, 780, 226 P. 972, the courts held that affidavits based on information and belief adequately supported procedural motions involving a party's residence, reasoning that residence is largely a matter of intent, which is generally beyond an affiant's direct knowledge. In People v. Smith (1976) 17 Cal.3d 845, 850, 132 Cal.Rptr. 397, 553 P.2d 557, the court observed that a search warrant seeking evidence of crimes may be supported by an affidavit containing the hearsay statements of informants. Finally, in City of Santa Cruz itself, the court held that affiants seeking access to police records to support allegations of police misconduct could submit declarations based on information and belief. (49 Cal.3d at p. 89, 260 Cal.Rptr. 520, 776 P.2d 222.)
By contrast, the courts have sometimes concluded that affidavits on information and belief do not meet the demands of a statute. In Gay v. Torrance (1904) 145 Cal. 144, 150-152, 78 P. 540, the court concluded that a lawyer's affidavit supporting a new trial motion was inadequate because the lawyer lacked personal knowledge of the irregular conduct of the judge, and there were witnesses to this alleged conduct. In reaching this conclusion, the court in Gay remarked that the refusal of the witnesses to submit affidavits did not alter the situation. (Id. at p. 152, 78 P. 540.) In Pratt v. Robert S. Odell & Co. (1944) 63 Cal.App.2d 78, 81-82, 146 P.2d *222 504, the court held that an affidavit based on information and belief did not support a motion to tax costs. Finally, in Riviello v. Journeymen Barbers etc. Union (1948) 88 Cal.App.2d 499, 502-503, 199 P.2d 400, the court held that an affidavit on information and belief alleging that parties seeking a preliminary injunction had engaged observable misconduct was inadmissible.
In our view, section 1524.1 does not "`"require[ ] a person to make a statement which from the very nature of things can only be made on information and belief. (City of Santa Cruz v. Municipal Court, supra, 49 Cal.3d at p. 87, 260 Cal.Rptr. 520, 776 P.2d 222, quoting Brown v. Happy Valley Fruit Growers, supra, 206 Cal. at pp. 520-521, 274 P. 977.) Section 1524.1 accords the victim the right to request a search warrant, and it requires the trial court to make probable cause findings about matters that are generally within the victim's personal knowledge, namely, that sexual offenses occurred, and these offenses involved conduct likely to transfer enumerated body fluids. Even in cases involving young children and other persons incapable of giving testimony, facts bearing on these matters will often be within the personal knowledge of doctors who have treated the victims, witnesses to the offenses, or police officers.
For this reason, section 1524.1 falls within the Gay-Prattr-Riviello line of cases, and outside the scope of City of Santa Cruz and the cases cited therein. Section 1524.1 does not authorize search warrants to secure evidence of crimes or misconduct (§ 1524.1, subd. (a)), unlike the laws at issue in City of Santa Cruz and Smith. Furthermore, the probable cause determinations that it requires do not rest on subjective matters of intent or other facts generally outside the personal knowledge of victims and witnesses, unlike the laws at issue in Blackman, Brown, and Davis-Heller-Pearce Co.
The People contend that affidavits under section 1524.1 are subject only to the requirements imposed on affidavits underlying search warrants that seek evidence of crimes, citing the placement of section 1524.1 within a chapter of the Penal Code entitled "Search Warrants" (pt. 2, tit. 12, ch. 3). This chapter contains provisions governing the issuance of warrants regarding evidence of crimes (§ 1523 et seq.). (See 4 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Illegally Obtained Evidence, §§ 79-142, pp. 701-768.) In this regard, subdivision (a) of section 1524 provides that a search warrant may be issued in several circumstances to secure evidence of crime or the fruits of crime.[4]
We are not persuaded. Although the placement of a statutory provision may be evidence of legislative intent (People v. Silverbrand (1990) 220 Cal. App.3d 1621, 1626, 270 Cal.Rptr. 261), the principles of statutory construction direct *223 us to consult in the first instance the language of the statute, and to avoid adding to the statute or rewriting it to conform to an assumed intent not apparent from the language. (People ex tel. Lungren v. Superior Court (1996) 14 Cal.4th 294, 301, 58 Cal.Rptr.2d 855, 926 P.2d 1042; In re Jerry R. (1994) 29 Cal.App.4th 1432, 1437, 35 Cal.Rptr.2d 155.) As we have explained, section 1524.1 expressly states that it is intended to benefit the victim and the accused, and that it does not authorize testing "for the purpose of a charging decision by a prosecutor . . . ."(§ 1524.1, subd. (a).) In view of this express language, the better view is that affidavits under section 1524.1 are not governed by the requirements applicable to affidavits supporting warrants that seek evidence or fruit of crimes.
On this question, the appellate division reasoned that under section 1524.1, the victims' mother was entitled to request a search warrant on behalf of her children, and her affidavit was adequate because she necessarily lacked personal knowledge of the material facts. Assuming (without deciding) that the mother could properly request a search warrant on behalf of her children, nothing in her declaration indicates why the affidavits could not have been submitted by persons with personal knowledge of the material facts, such as the alleged victims, medical personnel, or police officers, given that such persons were available to provide declarations. Absent some showing that these facts were necessarily beyond the personal knowledge of potential affiants, the trial court improperly relied on the mother's declaration in issuing the search warrant. (See Gay v. Torrance, supra, 145 Cal. at pp. 150-152, 78 P. 540.)
In sum, the trial court erred in issuing the search warrant under section 1524.1.

DISPOSITION
We deem this to be a proceeding in mandamus, and grant a peremptory writ of mandate. The appellate division is directed to vacate its April 11, 2001, decision and order certifying its opinion for publication, and to enter a new order granting the petition for writ of prohibition.
CHARLES S. VOGEL, P.J., and EPSTEIN, J., concur.
NOTES
[1] All further citations to rules are to the California Rules of Court, unless otherwise indicated.
[2] All further statutory citations are to the Penal Code, unless otherwise indicated.
[3] Given this conclusion, we do not address Humphrey's contention that the court rules permitting publication of appellate division opinions lack authorization under the California Constitution. (California State Electronics Assn. v. Zeos Int. Ltd. (1996) 41 Cal.App.4th 1270, 1274-1275, 49 Cal.Rptr.2d 127.)
[4] Subdivision (a) of section 1524 provides that a search warrant may be issued: "(1) When the property was stolen or embezzled. [¶] (2) When the property or things were used as the means of committing a felony. [¶] (3) When the property or things are in the possession of any person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he or she may have delivered it for the purpose of concealing it or preventing its being discovered. [¶] (4) When the property or things to be seized consists of any item or constitutes any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony. [¶] (5) When the property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring. [¶] (6) When there is a warrant to arrest a person."