[Crim. No. 19170. Aug. 31, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY DONALD SMITH, Defendant and Appellant.

846

**COUNSEL**

Benson Schaffer, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Russell Iungerich, Shunji Asari, Frederick R. Millar, Jr., and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Gregory Donald Smith was convicted by a jury of possession of marijuana (Health & Saf. Code, § 11357) and possession of marijuana for sale (Health & Saf. Code, § 11359). Prior to trial he moved pursuant to Penal Code section 1538.5 to suppress certain evidence, which motion was granted in part and denied in part. He appeals from the judgment of conviction.

Defendant contends that contraband introduced in evidence should have been suppressed as the fruit of an illegal search and seizure. He makes a number of additional contentions regarding trial proceedings. We conclude that a warrant authorizing the search of an automobile and an apartment was invalid and that contraband seized pursuant to the execution of the warrant should have been suppressed. As there is insufficient other evidence to support a finding of defendant's guilt the error was necessarily prejudicial and we reverse the judgment.

At trial, the evidence disclosed that on January 18, 1974, defendant invited Derek Dolson, then 17 years old, to a party at an apartment. Six other persons were present when defendant and Dolson arrived at the location later that evening. Sometime during the course of the evening Dolson noticed defendant with an empty blue suitcase and later that weekend Dolson saw marijuana in the suitcase and elsewhere in the apartment. He also observed defendant and others weighing, packaging and smoking marijuana. Dolson also smoked marijuana, rolled marijuana cigarettes and helped sort bricks of marijuana.

Early Sunday morning a brick of marijuana was sold and Dolson was suspected of taking $20 from the receipts of the sale. He left the apartment and about 4 a.m. got in touch with Police Officer Lord who was investigating a burglary about six blocks from the apartment. Dolson related to Lord that marijuana was being packaged and used in the apartment he had left. In addition he described an automobile in which he stated there had been marijuana and a shopping bag which he claimed contained the wrappings from bricks of marijuana and debris from take-out fried chicken dinners. The bag, he said, had subsequently been placed in a trash receptacle in the parking area of the apartment building.

Lord had never before seen or had any communication with Dolson. The officer drove Dolson to the vicinity of the apartment building where

he observed and verified the description of the automobile. He did not approach near enough to determine if contraband was visible within the vehicle. Lord and Dolson then went into the apartment's parking area where a trash receptacle serving the eight-to-fifteen-unit building was located. The commercial-sized receptacle was full, but not overflowing, and a shopping bag similar to that described by Dolson was found on top of other trash. The bag was opened and marijuana wrappings, marijuana debris and fried chicken containers were found inside the bag.[1] Dolson pointed out to the officer a specific apartment as the one occupied by defendant.

The automobile and apartment were placed under surveillance while a warrant to search them was obtained later Sunday morning. The warrant was issued pursuant to an affidavit based on the contents of the shopping bag and the information furnished by Dolson. Defendant and other persons departed in the automobile, with defendant driving, before the warrant was signed and delivered to the officers conducting the surveillance. The car was stopped almost immediately and the occupants were detained about 30 minutes until the warrant was brought to the scene. A thorough search of the automobile was conducted. Over four pounds of marijuana were found in the trunk in a sleeping bag which defendant had brought with him from the apartment. The apartment was then searched and several pounds of marijuana in bulk and a number of marijuana cigarettes were seized.

Defendant's motion to suppress pursuant to Penal Code section 1538.5 was granted as to evidence found in the automobile and denied as to evidence found in the apartment. The trial court ruled that there was no probable cause articulated in the affidavit in support of the warrant for the search of the car and that the officers making the stop did not independently have probable cause to detain the automobile and its occupants. The People do not challenge the propriety of the trial court's ruling as to the contraband seized in the vehicle.

The central issue herein is whether the affidavit in support of the search warrant alleges sufficient facts to establish Dolson's reliability as a citizen-informant or to corroborate the information volunteered by him. The affidavit, to be constitutionally sufficient, must comport with the requirements of the Fourth and Fourteenth Amendments as explained in *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114-115 [12 L.Ed.2d 723, 728-729,

---

[1] It does not appear that a usable quantity of marijuana was found in the shopping bag or otherwise in the trash receptacle.

84 S.Ct. 1509]. Because we conclude that the affidavit is not legally sufficient, we do not reach the question of whether *People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262] (vacated and remanded, 409 U.S. 33 [34 L.Ed.2d 45, 93 S.Ct. 32], reiterated (1973) 8 Cal.3d 623 [105 Cal.Rptr. 521, 504 P.2d 457]) applies in the instant circumstances to invalidate the seizure of the debris found in the trash receptacle or whether Officer Lord's presence near the trash container itself amounted to an impermissible entry into a constitutionally protected area.

*Aguilar* v. *Texas, supra,* 378 U.S. 108, established the controlling test for the determination of when a magistrate may constitutionally rely on hearsay in an affidavit in support of a search warrant. ■ We have restated the test as follows: "[F]or an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable." (*People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681]; *People* v. *Hill* (1974) 12 Cal.3d 731, 760-761 [117 Cal.Rptr. 393, 528 P.2d 1].)

The affidavit, sworn by Officer Lord's superior, contains the hearsay statements of Lord and the informant Dolson. Defendant does not challenge the affidavit for failing to satisfy the first prong of *Aguilar,* but contends that the second requirement has not been met.

The second prong would be met if Dolson were a citizen-informant or if his information were otherwise corroborated. ■ "A 'citizen-informant' is a citizen who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement. [Citations.] It is reasonable for police officers to act upon the reports of such an observer of criminal activity. [Citations.] [¶] A 'citizen-informant' is distinguished from a mere informer who gives a tip to law enforcement officers that a person is engaged in the course of criminal conduct. [Citations.] Thus, experienced stool pigeons or persons criminally involved or disposed are not regarded as 'citizen-informants' because they are generally motivated by some-

thing other than good citizenship. [Citations.]" (*People* v. *Schulle* (1975) 51 Cal.App.3d 809, 814-815 [124 Cal.Rptr. 585].) The designation "citizen-informant" is just as conclusionary as the designation "reliable-informant." In either case the conclusion must be supported by facts stated in the affidavit. (*Aguilar* v. *Texas, supra,* 378 U.S. 108, 114-115 [12 L.Ed.2d 723, 728-729]; *People* v. *Hill, supra,* 12 Cal.3d 731, 760-761; *People* v. *Hamilton, supra,* 71 Cal.2d 176, 179-180.)

■ The question of Dolson's status as a citizen-informant, like all other matters relative to probable cause for issuance of the warrant, was presented to the magistrate for determination solely on the affidavit and attachments thereto. An attachment entitled "Observations of Affiant" recites Dolson's viewing of the contraband and activities in the apartment, and relates the discovery of the shopping bag and its contents.[2] All that appears bearing on the question of Dolson's status as a citizen-informant are statements that he approached and identified himself to Officer Lord early one morning after having spent 12 hours at the apartment in question; that he had had prior contact with marijuana and was familiar with its appearance and odor; that while in the apartment he had observed seven or eight "kilo" bricks of marijuana being used, refined and packaged for sale by five or six persons; that he also observed quantities of "reds" (seconal) and "acid" (L.S.D.) in the apartment; that the persons in the apartment were under the influence of marijuana and other drugs; and that he was on parole and wished to remain anonymous for reasons of personal safety. A second attachment entitled "Reliable Informant" recites again Dolson's parole status and concern for his personal safety, and concludes with the affiant's opinion that the informant is a "reliable person" because he volunteered the information, identified himself, and accompanied an officer to the scene of the illegal activity where, apparently, the statement concerning disposal of the garbage was corroborated.

---

[2]Dolson's observations of the contraband and activities in the apartment are averred as follows: "On or about January 20, 1974, at 6:30 a.m., affiant was contacted by Officer Jeffery Lord of the Glendale Police Department regarding information and evidence he had secured from an informant. Officer Lord related that this informant had advised him that he, the informant, had been at the above listed premises, 614 East Garfield, apartment #4, the past previous 12 hours. During his stay at this location he had observed five or six people using, packaging, and refining marijuana. He also related that a portion of evidence which would verify this fact could be found in the trash bin at the rear of this location. Officer Lord returned the informant to 614 East Garfield and retrieved a plastic bag and a piece of blue masking tape which contained the residue and odor of dried marijuana plants. Observation of the affiant verified that the residue was in fact marijuana and that the tape was the type used for sealing large packages known as 'kilos' or 'bricks.' Officer Lord was contacted by the informant at 407 South Central,

The affidavit noticeably fails to explain Dolson's 12-hour presence in the apartment. Nothing appears which would establish him as, on the one hand, a participant in the illegal activities or as, on the other hand, an observer whose presence there was innocent of the illegal activity. Nor is there any explanation, express or implied, of the events or causes which motivated him to approach and make his disclosures to Officer Lord.[3] (See *People* v. *Schulle, supra,* 51 Cal.App.3d 809, 814-815.) Neither Dolson's age nor the fact he was a juvenile is stated in the affidavit. To the contrary, he is said to be on parole and is not named. (See *People* v. *Paris* (1975) 48 Cal.App.3d 766, 772 [122 Cal.Rptr. 272]; *People* v. *Herdan* (1974) 42 Cal.App.3d 300, 305 [116 Cal.Rptr. 641].)

An untested citizen-informant who has personally observed the commission of a crime is presumptively reliable (*People* v. *Hill, supra,* 12 Cal.3d 731, 761), but that status cannot attach if the affidavit is silent thereon. The affidavit must *affirmatively* set forth the circumstances from which the existence of the status can reasonably be inferred by a neutral and detached magistrate. The instant affidavit is thus insufficient to establish Dolson as a citizen-informant.

■ Viewing Dolson as a "mere informant," that is, not a citizen-informant, we find that the warrant also fails. Dolson was not an informant whose reliability had been previously tested, thus the specific question before us now becomes whether Dolson's information, including his description of the bag, its contents, and its location, was corroborated by the discovery of the bag in the receptacle with the described contents and marijuana debris.

---

Glendale, at approximately 0400 hours, 1/20/74. The informant approached Officer Lord without being solicited and related the following information: That he (informant) had been at 614 East Garfield, apartment #4, and had observed at that location seven to eight 'bricks' (kilos of marijuana). He also observed approximately 50 'reds' (Seconal) and an unknown quanity [sic] of 'acid' (L.S.D.). He further related that the parties at that location were under the influence of marijuana and other drugs. He further stated that he observed parties at the location disposing of the wrappings of the parcels of marijuana and that the wrappings had been disposed of in a brown paper bag along with chicken bones and packaging containers of Colonel Sander's [sic] fried chicken. Informant observed the trash container to be emptied into a large trash receptacle, bin type, at the rear of the apartment building."

[3]Additional factual matters disclosed at trial and heretofore noted fairly establish Dolson as initially a willing participant in the illegal activity who, because of internal disputes, broke away and became an informer. Although, as will appear, such matters would weigh heavily against Dolson's status as a citizen-informant, only those facts presented to the magistrate can be considered in our review of the determination of that status.

A similar situation has been previously addressed by this court. In *People* v. *Scoma* (1969) 71 Cal.2d 332, 339 [78 Cal.Rptr. 491, 455 P.2d 419], we concluded an informant's information was insufficiently corroborated to support a warrant because "the fact that the informant was found to possess narcotics gives no credence to his assertion that he obtained such narcotics from a named person; he obviously obtained them from someone, but mere possession cannot constitute support for his claim that he obtained them from one person rather than another."

The affiant in *Scoma* related information he had received from a named juvenile informant describing illegal activity in factual terms indicating personal knowledge of the activity. (*Id.,* at p. 337.) The informant was not a citizen-informant[4] and the affidavit stated no facts regarding his identity which bore on his reliability. (*Id.,* at p. 338 and fn. 7.) Concluding that none of the facts[5] in the affidavit provided corroborative support, we observed that "they amount to merely a reiteration of the accusation *by the informant*; the affidavit contains absolutely nothing to indicate that additional facts independently known or discovered by the police supported the accusation thereby imparting credit to the informant." (*Id.,* at pp. 339-340; original italics.)

In the instant case there was no showing that the bag of trash found in the receptacle was intrinsically related to the apartment as would have been true had receipts or envelopes indicating that address been found in it. The bag was found where the informant said it would be, and it did contain the described trash and in addition marijuana debris, but the discovery in no way established the informant's reliability on the critical issue of the origin of the material. The "corroboration" was no more

---

[4]A dissenting view in *Scoma* urged that a minor who becomes involved in narcotic activity should be deemed a victim and accordingly treated as a citizen-informant whose disclosures need not be corroborated. (*People* v. *Scoma, supra,* 71 Cal.2d 332, 340.) Unlike the affidavit in that case, however, the affidavit in the instant case does not identify Dolson as a juvenile. Accordingly, even under the dissenting view in *Scoma* the instant affidavit is deficient.

[5]"[T]he only significant facts in the affidavit upon which the magistrate could have concluded that the informant's report of illegal activity was reliable are (1) that certain substances found in the informant's possession were identified by laboratory analysis as narcotics; (2) that the landlady at 'Dewey's' alleged residence both confirmed that a man matching 'Dewey's' description lived at that address, and stated that certain papers discovered by her indicated that a woman living with the suspect had lived with him at 'Dewey's' alleged previous address; (3) that certain lists of names and telephone numbers obtained from the informant's wallet contained the name and telephone number of 'Dewey' *among others*; and (4) that certain notes found in the informant's wallet were identified by him as narcotics price lists which had been furnished to him by 'Dewey.' " (*Id.,* at pp. 338-339; original italics.)

adequate than in *Scoma* where the contraband was found in the informant's possession and he said it had come from a particular person.

As the affidavit is constitutionally insufficient to support the warrant, the contraband seized pursuant to its execution should have been suppressed. We do not deem it necessary or productive to address defendant's other contentions.

The judgment is reversed.

Tobriner, J., and Sullivan, J., concurred.

**MOSK, J.**—I concur in the judgment.

I do so reluctantly, however, because of the failure of the majority to forthrightly face the problem created by this court's opinion in *People* v. *Scoma* (1969) 71 Cal.2d 332 [78 Cal.Rptr. 491, 455 P.2d 419]. Had my dissent in *Scoma* (*id.,* at p. 340) been the prevailing law of California the police officer would have been alerted to the need in his affidavit of identifying the informer as a juvenile and pursuant to law the boy would have qualified as a citizen-informer.

I adhere to the position advocated in my dissent in *Scoma*: that in these circumstances we should not weigh a minor's role as an informant in the classic sense; a minor should be deemed a victim. While the 17-year-old boy in this case is hardly a model of civic virtue, he had been furnished marijuana by persons dealing in contraband and to that extent was a victim of a criminal offense. (*People* v. *Poindexter* (1958) 51 Cal.2d 142, 149-150 [330 P.2d 763]; *People* v. *Chrisman* (1967) 256 Cal.App.2d 425, 435 [64 Cal.Rptr. 733].)

A victim is deemed a reliable citizen-informant. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 268-269 [127 Cal.Rptr. 629, 545 P.2d 1333].) A juvenile's complaint against his supplier of contraband has been held sufficient to provide probable cause for an arrest. (*People* v. *Bishop* (1965) 235 Cal.App.2d 658 [45 Cal.Rptr. 533]; *People* v. *Weathers* (1958) 162 Cal.App.2d 545 [328 P.2d 222].) And his observations have been deemed adequate for the issuance of a search warrant (*People* v. *Schulle* (1975) 51 Cal.App.3d 809 [124 Cal.Rptr. 585]).

The test is not the facts known to the officer, but, according to *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], the factual

information related in the affidavit submitted to the magistrate. Unfortunately the officer failed to disclose the informant's age. Had he done so the affidavit would be sufficient.

I hope in the future that law enforcement officers will indicate in their affidavits when they rely upon information obtained from juveniles. And whenever we have a clear-cut opportunity I trust this court will adopt the rule urged in the *Scoma* dissent. It will "further the use of warrants" by removing "unnecessary burdens upon their use." (*People* v. *Keener* (1961) 55 Cal.2d 714, 723 [12 Cal.Rptr. 859, 361 P.2d 587].)

**CLARK, J.**—I dissent on the ground that Dolson was a "citizen informant" and, hence, presumptively reliable. (See *People* v. *Hill* (1974) 12 Cal.3d 731, 761 [117 Cal.Rptr. 393, 528 P.2d 1].)

The distinctions between "citizen informants" and "police informants" were recently summarized in *People* v. *Ramey* (1976) 16 Cal.3d 263, 268-269.[1] "The courts have recognized a distinction between informers who are virtual agents of the police and 'citizen informants' who are chance witnesses to or victims of crime. The former are often criminally disposed or implicated, and supply their 'tips' to the authorities on a recurring basis, in secret, and for pecuniary or other personal gain. The latter are innocent of criminal involvement, and volunteer their information fortuitously, openly, and through motives of good citizenship. Because of these characteristics, the requisite showing of reliability in the case of a citizen informant is significantly less than that demanded of a police informer.

"It may therefore be stated as a general proposition that private citizens who are witnesses to or victims of a criminal act, absent some circumstance that would cast doubt upon their information, should be considered reliable. This does not, of course, dispense with the requirement that the informant—whether citizen or otherwise—furnish underlying facts sufficiently detailed to cause a reasonable person to believe that a crime had been committed and the named suspect was the perpetrator; and the rule also presupposes that the police be aware of the identity of the person providing the information and of his status as a true citizen informant. In short, probable cause will not be provided by conclusionary information or anonymous informants, but neither a previous

---

[1] I dissented in *Ramey* on another issue, concluding that warrantless probable cause arrests within the home are permissible in the absence of an emergency. (16 Cal.3d at pp. 277-281.)

demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities." (Citations omitted.)

When he sought the warrant Officer Lord had no reason to believe that Dolson was a police informant. There was no indication that Dolson was implicated in the crimes he reported witnessing. Nor was there any indication that he had supplied tips to the police "on a recurring basis . . . and for pecuniary or other personal gain."

Dolson's status as a parolee might be said to be some evidence of a criminal disposition. However, there was no indication that his prior conviction had been a drug offense. Nor was there any indication that it had been an offense bearing on his veracity. (Cf. *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].) Moreover, this court held that a person was a citizen informant, "both as a victim and witness to the crime," even though his information concerned the fact that he had been robbed and his companion had been murdered while they had been attempting to buy marijuana. (*People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1].)[2]

Dolson did ask that his identity not be disclosed; however, he was the antithesis of an anonymous informant. He disclosed his identity to Officer Lord and told the officer how to contact him in the future. Moreover, he was available to and did testify below. The fact that a citizen does not want his safety unnecessarily jeopardized does not adversely reflect upon his reliability.

Finally, Dolson's information was sufficiently detailed to lead a reasonable person to believe that property subject to seizure would be found on the premises to be searched. The majority do not contend otherwise.

The majority mention Dolson's parole status and his desire not to disclose his identity unnecessarily. (*Ante,* p. 852.) However, I do not understand the majority to hold that these facts disqualified Dolson as a citizen informant. Rather, I understand them to hold that the affidavit was deficient because it failed to "*affirmatively* set forth" facts from which the magistrate could infer that Dolson was motivated by good citizenship. (*Id.*)

---

[2]I dissented in *Hill* on another ground, concluding that the harmless error doctrine is applicable to an appeal taken from a guilty plea following erroneous denial of a motion to suppress evidence. (12 Cal.3d at pp. 770-771.)

"Nothing [being] more impenetrable than the motivation of our actions,"[3] it is not clear what showing would satisfy the majority. However, it is clear that the showing made here would have been found satisfactory under previous authority. Moreover, this proposition can be demonstrated with cases bearing a striking factual similarity to this case.

In *Krauss* v. *Superior Court* (1971) 5 Cal.3d 418 [96 Cal.Rptr. 455, 487 P.2d 1023], the informant, a motel maid, discovered marijuana in a room she was cleaning. She had previously attended a drug demonstration class conducted by the police department at which she saw and smelled marijuana. The maid informed the motel manager of her discovery and the manager informed the police. The maid was held to be a citizen informant. (5 Cal.3d at pp. 421-422.)

In *People* v. *Chavez* (1969) 275 Cal.App.2d 54 [79 Cal.Rptr. 701], a man approached two police officers and informed them that he had just observed a described suspect attempting to sell marijuana to one of the informant's friends; he added that he had seen the suspect hide the marijuana in his left sock. The officers secured the informant's address, satisfied themselves that he could recognize marijuana, and determined that he was willing to testify in court. He was held to be a citizen informant.

In *People* v. *Young* (1970) 12 Cal.App.3d 878 [90 Cal.Rptr. 924], the informant, a 13-year-old girl, told a police officer that she and her 17-year-old sister had visited the defendant at the premises for which the search warrant was later sought. The informant's sister asked the defendant "Where is the grass?" The defendant then brought out a plastic bag of what appeared to be marijuana, rolled it into cigarettes, and, along with the sister and a third person, smoked the cigarettes. Each of them told the informant that it was "grass" they were smoking. The informant's description of its odor and appearance satisfied the officer that the substance was marijuana. The 13-year-old girl was held to be a citizen informant.

In *People* v. *Mardian* (1975) 47 Cal.App.3d 16 [121 Cal.Rptr. 269], an informant contacted a deputy sheriff and told him that her friend admitted having stored narcotics in her (the friend's) home. A second informant, the first informant's 13-year-old daughter, later told the deputy that while babysitting in the suspect's home that day she had seen

---

[3]G. C. Lichtenberg, Reflections.

a suitcase containing several small plastic bags filled with a white powdery substance; she added that the suspect's 7-year-old son had told her that the suitcase contained "dope." Both the mother and daughter were held to be citizen informants. (47 Cal.App.3d at p. 33.)

Rounding off this representative selection is *People* v. *Schulle* (1975) 51 Cal.App.3d 809 [124 Cal.Rptr. 585], a case made more significant by the fact that the majority adopt its restatement of the law concerning citizen informants. (*Ante*, p. 850.) In *Schulle*, the informant, a 14-year-old girl named Simmons, contacted Lieutenant Roxon and informed him that her mother and stepfather smoked marijuana "continually," had once raised marijuana plants, and presently had marijuana in their home. She added that she not only recognized the appearance and odor of marijuana but also had smoked it herself. In holding Miss Simmons to be a citizen informant, the Court of Appeal recited the test adopted by the majority and then applied it, stating: "In the instant case Miss Simmons was clearly a witness to a crime. There is nothing to show that she was an experienced stool pigeon or that she was criminally involved or disposed. The statement by Roxon that Miss Simmons told him that she has seen marijuana and recognizes its appearance and smell are not indicative of criminal activity but are consistent with her observation at her home and in the presence of defendants as narrated in her statement to Roxon. Miss Simmons' admission to Roxon that she has smoked marijuana, although an admission of criminal activity, does not establish as a matter of law that she was a person criminally involved or disposed so as to compel the conclusion that she was not an innocent victim or bystander but a person who was motivated by something other than good citizenship." (51 Cal.App.3d at p. 815.)

Dolson clearly being a citizen informant under applicable precedent, I would affirm the conviction.

McComb, J., and Richardson, J., concurred.

Respondent's petition for a rehearing was denied September 29, 1976. Clark, J., was of the opinion that the petition should be granted.